UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IN RE: AIR CRASH NEAR CLARENCE CENTER,
NEW YORK, ON FEBRUARY 12, 2009,

**DECISION AND ORDER**
09-md-2085

This document relates to:
09-CV-769S

## I.  INTRODUCTION

On February 12, 2009, while on final approach to the Buffalo Niagara International Airport, Continental Connection Flight 3407 crashed into a house in Clarence Center, N.Y., killing all 45 passengers, the four-person crew, and one person in the house.  By order entered October 6, 2009, the United States Judicial Panel on Multidistrict Litigation transferred all then-pending actions concerning the crash of Flight 3407 to this Court for coordinated or consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407.  In Re Air Crash Near Clarence Ctr., N.Y., on Feb. 12, 2009, 655 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009).  Subsequently-filed actions have also been transferred here.

Plaintiff Ping Wang's decedent is her husband, Zhaofang Guo.  (Declaration of Terrence M. Connors, Esq., Docket No. 1176, ¶ 2.[1])  Zhaofang Guo and Plaintiff have one child — Kevin Guo — who suffers from Asperger's Disorder.  (Connors Decl., ¶¶ 3, 9, 10.) Asperger's Disorder is marked by "qualitative impairments in social interaction and restricted, repetitive, and stereotyped patterns of behavior, interests, and activities." (Expert Report of Dr. Lynda Geller, Docket No. 1170-2, p. 13.)  Plaintiff and Kevin Guo are the only beneficiaries under Zhaofang Guo's Will.  (Connors Decl., ¶ 9.)

Presently before this Court is a motion brought by Defendants Colgan Air Inc. and

---

[1] All docket references are to the multidistrict case, 09-md-2085, unless otherwise noted.

Pinnacle Airlines Corp. (collectively "Colgan") to compel complete and proper discovery responses to their First, Second, Third, and Fourth Requests for Production of Documents and Things, and to their First Interrogatories. (Docket No. 1167.) Colgan also seeks an Order compelling Plaintiff to produce information from her experts, and further requests the issuance of a judicial subpoena to access the decedent's email communications. This Court has reviewed and considered the parties' motion papers and finds oral argument to be unnecessary. For the reasons discussed below, Colgan's motion is granted in part and denied in part.

## II. DISCUSSION AND ANALYSIS

### A. Discovery Standard

District courts enjoy broad discretion when resolving discovery disputes. That discretion is exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled. See Yancey v. Hooten, 180 F.R.D. 203, 207 (D.Conn. 1998).

Discovery in federal court is broad and permissive. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to any party's claim or defense . . . ." (Emphasis added.) Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991)); see also FED. R. CIV. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

This relevance standard is "necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" LaForest v. Honeywell Int'l Inc., No. 03-CV-6248, 2004 WL 1498916, at *2 (W.D.N.Y. July 1, 2004) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) and omitting citation); see also Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 52 (D.Conn. 2005) ("Relevancy continues to be 'broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party.'") (citations omitted; emphasis in original).

But this permissive standard is not unfettered. For example, under Rule 26 (b)(2)(C)(I), a court must limit discovery if it finds that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." A court must also limit discovery if it finds that the burden or expense of the requested discovery outweighs its likely benefit. See Rule 26 (b)(2)(C)(iii).

The party seeking discovery to which it believes it is entitled may seek to compel production under Rule 37 (a). The party resisting discovery bears the burden of specifically demonstrating why the requested discovery — which for documents and things need only be described with "reasonable particularity" under Rule 34 (b)(1)(A) — is objectionable. See Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). Objections must clearly set forth the specifics of each objection and how that objection relates to the discovery being demanded. Id. (citing Roesberg v. Johns-Manville Corp., 85 F.R.D. 292 (E.D.Pa. 1980)). Pat, generic, boilerplate, and non-specific objections will not

suffice. Obiajulu, 166 F.R.D. at 295.

**B.     Previous Discovery Decisions**

Two of this Court's previous decisions bear on the issues raised in the instant motion.

In the Pan[2] action, this Court determined that the decedent's and claimants' financial records were discoverable because they were relevant to claims for loss of support, loss of consortium, and loss of services. See In re Air Crash Near Clarence Center, New York, On February 12, 2009, Nos. 09-md-2085, 09-CV-961S, 2011 WL 6370189, at *4 (W.D.N.Y. Dec. 20, 2011). And because the decedent's gross income, lost earnings, and financial support of the claimants were relevant to those claims, this Court ordered the production of the decedent's and claimants' checking, bank, credit card, debit card, and investment statements, as well as any other records that reflected their personal, family, educational, and business spending, between 2004 and 2009. See id.  This Court also ordered the production of records pertaining to the valuation of the decedent's estate, as relevant to the plaintiff's loss-of-inheritance claim. See id.

In a subsequent decision involving four other individual actions,[3] this Court reaffirmed its findings that a claimant's credit card and financial records (including banking, credit, investment and retirement accounts, and W-2 forms) are discoverable as relevant to pecuniary damages, including claims for loss of future support. See In re Air Crash Near Clarence Center, New York, On February 12, 2009, Nos. 09-md-2085, 09-CV-440S, 09-

---

[2]09-CV-961S

[3]09-CV-440S (Perry); 09-CV-378S (Davidson); 09-CV-379S (Davidson); 09-CV-294 (Perry)

CV-379S, 09-CV-378S, 09-CV-294S, 2013 WL 5936975, at *3-*5, *7 (W.D.N.Y. Nov. 4, 2013).

**C.     Colgan's Discovery Requests**

Colgan's requests derive from its four Requests for Production of Documents and Things and its First Interrogatories.  Plaintiff has produced documents in response to Colgan's requests, but Colgan maintains that further production is necessary in the areas discussed below.  Plaintiff maintains that she has adequately responded to Colgan's requests, and that her objections to providing further discovery are proper under the law.

**1.     Credit Card and Bank Records**

Citing this Court's previous discovery decisions, Colgan seeks production of the decedent's and claimants' credit card and bank records,[4] including any documents concerning insurance policies on the cards.[5]  Colgan maintains that these documents are relevant to personal consumption, as well as to the claimants' claims for lost support and loss of future financial assistance.  Plaintiff maintains that credit card and bank statements are not relevant or discoverable, and that Colgan's request for them is unreasonably cumulative and duplicative of the discovery already provided.  Plaintiff also maintains that life insurance information pertaining to the decedent's credit cards is exempt from disclosure under NY CPLR § 4545 (a).

Although Plaintiff may not agree, this Court has twice found that credit card and

---

[4]Colgan articulated its request as one seeking "a complete set of each claimants' financial records," but it discusses only credit card and bank records.  (See Colgan's Memorandum of Law, Docket No. 1170, p. 9).  This Court therefore considers only the request for credit card and bank records.

[5]Colgan also sought production of the decedent's statement of wages from the Social Security Administration, but Plaintiff has already produced those documents.  (See Plaintiff's Memorandum of Law, Docket No. 1176-10, pp. 9-10.)

bank records are discoverable, because they are relevant to the issue of pecuniary damages.  See In re Air Crash Near Clarence Center, New York, On February 12, 2009, 2011 WL 6370189, at *4 (finding that financial records are relevant to claims for loss of support, loss of consortium, and loss of the decedent's services, and may reveal the degree to which a claimant financially depended on the decedent); In re Air Crash Near Clarence Center, New York, On February 12, 2009, 2013 WL 5936975, at *6 (noting that "information regarding claimants' financial status may be relevant to the issue of pecuniary damages").

As to the decedent and Kevin Guo, Plaintiff is directed to produce their credit card and bank records, because Plaintiff has failed to distinguish this Court's previous decisions. As to herself, however, Plaintiff need not produce additional credit card or bank statements because she is the decedent's spouse — a distinction not raised in Pan — and as such, her financial status is irrelevant.  See In re Air Crash Near Clarence Center, New York, On February 12, 2009, 2013 WL 5936975, at *4 (noting that "where the claimant is the decedent's spouse, the claimant's financial status is irrelevant because any reasonable expectation of future support from the decedent is based on the marriage, not financial need") (citing Matter of Frank, 286 A.D. 986, 144 N.Y.S.2d 435 (N.Y.A.D. 4th Dep't 1955)).

As to Colgan's request for records pertaining to insurance on the decedent's credit cards, Plaintiff has not demonstrated that NY CPLR § 4545 (a) precludes discovery. Section 4545 (a) exempts life insurance as a collateral source that can be used to offset

a wrongful death award.[6] This section governs admissibility, however, not discovery. In addition, not all types of life insurance benefits are necessarily exempted. See Bryant v. New York City Health & Hosps. Corp, 93 N.Y.2d 592, 608 (N.Y. 1999) ("CPLR 4545 does not exempt from offset collateral sources that are 'in the nature of life insurance' or 'analogous to life insurance benefits." (citation omitted)). The exact nature of the insurance at issue is unclear. Consequently, this Court finds that Colgan is entitled to discovery on this issue and Plaintiff is ordered to produce it. Any issues regarding admissibility will be resolved at trial.

### 2. Records Relating to the Valuation of the Decedent's Estate

Colgan seeks production of documents pertaining to the decedent's investment property in South Carolina and a list and estimated value of each asset that the decedent

---

[6]NY CPLR § 4545 (a) provides as follows:

> Actions for personal injury, injury to property or wrongful death. In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source, except for life insurance and those payments as to which there is a statutory right of reimbursement. If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any such collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits. In order to find that any future cost or expense will, with reasonable certainty, be replaced or indemnified by the collateral source, the court must find that the plaintiff is legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement, subject only to the continued payment of a premium and such other financial obligations as may be required by such agreement. Any collateral source deduction required by this subdivision shall be made by the trial court after the rendering of the jury's verdict. The plaintiff may prove his or her losses and expenses at the trial irrespective of whether such sums will later have to be deducted from the plaintiff's recovery.

held at the time of his death. Colgan maintains that these documents are relevant to Plaintiff's damages claims, including claims for loss of inheritance. Plaintiff resists this discovery on the basis that the value of the South Carolina property is not at issue. That is, there is no claim that the value of the property decreased due to the decedent's death.

This Court has already determined that a valuation of a decedent's estate at the time of his or her death is relevant to a loss-of-inheritance claim and that Colgan is entitled to relevant discovery. See In re Air Crash Near Clarence Center, New York, On February 12, 2009, 2011 WL 6370189, at *4. Inasmuch as Plaintiff asserts such a claim here, she must produce responsive documents concerning the value of the South Carolina property (which would include any loans) and any other assets held by the decedent at the time of his death. Plaintiff is not required, however, to create an asset or valuation list, or any other documents, in response to Colgan's demand. See In re Gen. Elec. Co. v. Macejka, 252 A.D.2d 700, 701, 675 N.Y.S.2d 420, 420 (N.Y.A.D. 3d Dep't 1998) (stating that "it is axiomatic that a party may not be compelled to create documents in order to comply with discovery demands").

### 3. Facebook Records

Colgan seeks production of Kevin Guo's Facebook "friend list," as well as an Order that Plaintiff be directed to supplement her Facebook production as required by Rule 26(e) of the Federal Rules of Civil Procedure. Plaintiff maintains that she has produced every page of Kevin's Facebook accounts (more than 2,000 pages), but that she is not required to produce Kevin's "friend list" or supplement her production.

In Pan, this Court ordered limited production of social media account records after finding such records relevant to two specific issues in that case — Plaintiff's domicile and

the claimants' loss of support claims.  See In re Air Crash Near Clarence Center, New York, On February 12, 2009, 2011 WL 6370189, at *6.  Relying on that decision, Colgan argues that production of Kevin's "friend list" here is relevant to assessing Kevin's Asperger's Disorder, particularly his ability to socialize and communicate with others.  This Court is not convinced.

Given the ease with which "friends" can be collected on Facebook — indeed, one can be "friends" with people known to them, with strangers, with celebrities, with animals, and even with inanimate objects — Colgan's argument that Kevin's "friend list" is relevant to assessing his ability to socialize and communicate is unpersuasive.  There seems little likelihood of a correlation between the number of one's virtual Facebook friends and one's ability to socialize and communicate in the real world.  To the extent Kevin's Facebook presence contributes to an assessment of his Asperger's Disorder, Plaintiff's Facebook production thus far, which includes every post, picture, and message, is adequate.  Kevin's "friend list" adds nothing meaningful and Plaintiff is therefore not required to produce it.  Plaintiff has not, however, demonstrated that supplementing her Facebook production is unduly burdensome under Rule 26 (b)(2)(C).  She therefore remains subject to the supplemental disclosure requirements of Rule 26 (e)(1).

### D.  Colgan's Request for Expert Testing Reports

Colgan seeks production of the psychological testing conducted on Plaintiff and Kevin Guo by Plaintiff's experts and maintains that this information should have been produced along with the expert reports under Rule 26 (a)(2).  Plaintiff argues that Colgan's request is unclear and, in any event, Rule 26 (a)(2) does not require such disclosure.

Testing performed in conjunction with a psychological examination is discoverable

under Rule 26 (a)(2).  See, e.g., McCumons v. Marougi, CIV. 08-11164-BC, 2011 WL 1330807, at *3 (E.D. Mich. Apr. 7, 2011) (finding that Rule 26 (a)(2)(B)(ii) requires production of "raw data" from psychological testing); Taylor v. Erna, No. 08-10534-DPW, 2009 WL 2425839, *1-*2 (D. Mass. Aug. 3, 2009) (similar).  Moreover, Plaintiff has expressed a willingness to produce the expert testing materials underlying her experts' opinions.  (See Plaintiff's Memorandum of Law, Docket No. 1176-10, p. 23.)  Plaintiff is therefore directed to produce copies of the psychological testing conducted on Plaintiff and Kevin Guo.  To the extent further clarification concerning the specific materials Colgan seeks is necessary, the parties are directed to meet and confer to resolve such issues without further judicial intervention.

**E.     Colgan's Request for the Issuance of a Judicial Subpoena to Access Email Records**

Colgan seeks the issuance of a subpoena to Yahoo! directing it to produce to Plaintiff's counsel the decedent's email communications between 2004 and February 12, 2009. Plaintiff does not oppose this request.  According to the parties, Yahoo! is unwilling to produce this information in the absence of a subpoena and, as a practical matter, the decedent's account may have been purged due to inactivity.  Nonetheless, given the lack of opposition and this Court's previous finding that electronic communications may be relevant to loss of support claims, see In re Air Crash Near Clarence Center, New York, On February 12, 2009, 2011 WL 6370189, at *6, Colgan may prepare and submit a subpoena to the Clerk of Court for issuance.

## III.  CONCLUSION

Defendants' Motion to Compel is granted in part and denied in part, consistent with this decision.  The information ordered to be produced is reasonably calculated to lead to the discovery of admissible evidence regarding claims and defenses in this case and production is not unduly burdensome.

## IV. ORDERS

IT HEREBY IS ORDERED, that Colgan's Motion to Compel Discovery (Docket No. 1167) is GRANTED in part and DENIED in part.

FURTHER, that Plaintiff shall provide responsive documents as ordered herein by December 1, 2013.

SO ORDERED.


Dated:  November 17, 2013
        Buffalo, New York


                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    Chief Judge
                                    United States District Court